# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

CATHERINE LOPEZ, *ex rel. her minor son V.S.*,

    Plaintiff,

v.                                                      Civ. No. 19-316 MV/GJF

ANDREW SAUL, *Commissioner of the Social Security Administration*,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Catherine Lopez's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 22] ("Motion"). The Motion is fully briefed. *See* ECFs 26 (Commissioner's Response), 29 (Plaintiff's Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL BACKGROUND

In May 2015, Plaintiff applied for social security disability benefits on behalf of her then 13-year-old son, V.S., claiming he was disabled due to autism, attention deficit hyperactivity disorder ("ADHD"), anxiety, and child development issues. Administrative Record ("AR") 94.[1] In November 2015, the Social Security Administration (SSA) found that, in six broad areas of functioning, her son had only one "marked" limitation and no "extreme" limitations and thus

---

[1] Although Plaintiff claimed that her son was disabled as of October 2005 (at age four), the instant case concerns only whether he was disabled between May 2015 (at age 13) and April 2018 (at age 16). AR 45.

concluded that he was not disabled. AR 98-101.[2] In July 2016, upon Plaintiff's request for reconsideration, the SSA again concluded that her son was not disabled, finding that he had no "marked" or "extreme" limitations in any of these six areas. AR 106-07, 111-115, 129.

After these denials, Plaintiff requested a hearing, which was held in July 2017 before Administrative Law Judge (ALJ) Ann Farris. AR 67, 127. In April 2018, the ALJ also found that Plaintiff's son had no "marked" or "extreme" limitations in these six areas and likewise concluded that he was not disabled. AR 37-45. In February 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, after which Plaintiff timely petitioned this Court for relief. AR 1; ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff claims that, in light of additional evidence she submitted, the Appeals Council erred in denying her request for review. Mot. 5-12; AR 1-2. Plaintiff also claims that the ALJ erred by not weighing (1) the state agency consultants' opinion in the initial denial notification, (2) a treating pediatrician's 2008 opinion in a school medical information form, and (3) certain test scores. Mot. 12-17.

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

---

[2] These six areas of functioning (or "domains"), along with the definitions of "marked" and "extreme" limitations, are further discussed in Section III(B) below.

2

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Establishing a Disability for Children

For a child to be considered disabled, three "steps" must be met: (1) the child must not "engage[] in substantial gainful activity;" (2) the child must have a "medically determinable impairment(s)" that is "severe" (i.e., that "causes more than minimal functional limitations"), and (3) the child's "impairment or combination of impairments" must "meet, medically equal, or functionally equal the listings" and have lasted (or be expected to last) 12 months. 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. §§ 416.924(b)-(d), 416.926a(a).

In assessing this third step, if the SSA establishes that the impairment or combination of impairments does not "meet or medically equal any listing," it then assesses whether such impairment(s) "functionally equals the listings." § 416.926a(b). Specifically, it considers how the child functions "in terms of six domains." *Id.*[3] If two of these domains have "marked"[4] limitations,

---

[3] These six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do," consist of "[1] Acquiring and using information; [2] Attending and completing tasks; [3] Interacting and relating with others; [4] Moving about and manipulating objects; [5] Caring for yourself; and, [6] Health and physical well-being." *Id.*

[4] A domain will have a "marked" limitation when the child's impairment(s) interferes "seriously" with his "ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2). "It is the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* As a frame of reference, in "normally distributed data (which is the sort of data we would expect on a standardized test)," only "2.3% of the population" is "two or more standard deviations below the mean." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 458 (S.D.N.Y. 2008) (citing J.L. Devore & K.N. Berk, *Modern*

or one domain has an "extreme"[5] limitation, then the impairment(s) "functionally equals the listings." § 416.926a(d).

## IV. THE SSA'S DENIAL OF BENEFITS

### A. The ALJ's Decision

#### 1. *Steps One to Three*

In her written decision, the ALJ affirmed that she carefully considered "all of the relevant evidence" in the case record. AR 37 (quoting SSR 09-2p) (citing 20 C.F.R. § 416.924a(a)). In doing so, she found that the alleged disabling limitations due to V.S.'s symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 38. Specifically, she found that, during the applicable time frame of May 2015 to April 2018, V.S. had neither two "marked" limitations nor one "extreme" limitation—and was therefore not disabled. AR 39-45.

In reaching this conclusion, the ALJ followed the three-step process for determining whether a child is disabled. AR 35-45. First, she found that V.S. had "not engaged in substantial gainful activity" since May 2015, when the application for disability benefits was filed. AR 37. Second, she found that V.S. had the following severe impairments: "autism spectrum disorder and [ADHD]." *Id.*[6] Third, she found that V.S. did not have "an impairment or combination of

---

*Mathematical Statistics with Applications*, 787 (2007)). And only "0.13% of the population" is three or more standard deviations below the mean. *Id.* Thus, "in a group of 100 children evaluated in a domain, only the worst performing two children would be considered to have a 'marked' limitation under the definition." *Id.*

[5] A domain will have an "extreme" limitation when the impairment interferes "very seriously" with the child's "ability to independently initiate, sustain, or complete activities." § 416.926a(e)(3). "It is the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* "In other words, in a group of 1000 children evaluated in a domain, only the worst performing child would be considered to have an 'extreme' limitation." *Johnson*, 563 F. Supp. 2d at 458-59.

[6] She also found that he had the non-severe, but medically determinable, impairments of "a tic disorder and anxiety disorder." *Id.*

5

impairments that me[t] or medically equal[ed] the severity of one of the listed impairments." *Id.* Consequently, she then proceeded to the second part of step three: determining whether V.S. had an impairment or combination of impairments that "functionally equal[ed]" the listings. *Id.*

2. *Step Three's Functional Equivalency Test*

In performing this functional equivalency test, the ALJ assessed V.S.'s limitations in terms of the six domains, finding that he had no limitations in two domains[7] and "less than marked" limitations in the other four.[8] Regarding these four "less than marked" domains, the ALJ gave great weight to the February 2016 evaluation of psychiatrist Jeanne Bereiter, M.D., who treated V.S. and "noted [his] symptoms ha[d] decreased since starting treatment." AR 38 (citing AR 912-14).[9] She also gave partial weight to the August 2017 evaluation of psychologist Marybeth Graham, Ph.D., who noted improvements in V.S.'s social interactions, focus and attention, and anxiety, as well as decreased compulsive behaviors. AR 38-39 (citing AR 982-1001).[10]

The ALJ also individually addressed each of these four domains, explaining why she found each of them to have "less than marked" limitations. First, in rating the "acquiring and using

---

[7] *I.e.*, "moving about and manipulating objects" and "health and physical well-being." AR 42-44.

[8] *I.e.*, "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "the ability to care for himself." AR 39-44.

[9] *See also* AR 912 (Dr. Bereiter noting that V.S., then in eighth grade, was "concentrating better" and that his "grades [were] better in school since [the] increase" in his ADHD medication).

[10] *See also* AR 986-87 (Dr. Graham noting in her summary that V.S., who was then in tenth grade, still had some difficulties with social interaction, "applying age-appropriate adaptive skills," and coping with "changes in his routine especially when anxiety is present"—but also noting that he was "demonstrat[ing] increasing signs of reciprocity, social motivation and interest in peer interaction," that "[m]edication management intervention ha[d] been beneficial to improve focus and attention and ha[d] decreased compulsive behaviors and anxiety," and that there were "consistent improvements" during the last year).

information" domain, the ALJ relied on, among other things, Plaintiff's testimony that her son did well in this area and V.S.'s testimony about his good grades in school. AR 40.

Second, in rating the "attending and completing tasks" domain, the ALJ noted that V.S. showed great improvement during the 2015-16 school year and was on target to graduate. AR 40-41. In addition, she noted that V.S. "cares for his dog, feeds the fish, does dishes, pulls weeds, and takes the trash out, [and] need[s] only occasional reminders." AR 41. She also observed that, although one teacher indicated some "serious problems" in this domain, the school's social worker only indicated a serious problem in "refocusing to task when necessary." AR 40-41. Lastly, the ALJ also incorporated Dr. Graham's observation that medication management had improved V.S.'s focus and attention and decreased his compulsive behaviors and anxiety—as well as Dr. Graham's observation that, during V.S.'s evaluation, he had no difficulties "transitioning either between activities or examiners" and displayed "adequate attention and motivation throughout the assessment." *Id.* (citing AR 996-998).

Third, in rating the "interacting and relating with others" domain, the ALJ concluded that although V.S. had "limitations in this area," he had "improved greatly." AR 42. In doing so, the ALJ noted Plaintiff's reports to various provider that her son's "medication ha[d] been effective" and that she has "seen improvement in his overall behavior." *Id.* The ALJ also noted that, while the teacher indicated some serious problems in this domain, the teacher also stated that removing V.S. from the classroom and calling his mother or visiting the school social worker helped to calm him down. *Id.* In addition, the school social worker did not find any serious problems in this area. *Id.* Finally, the ALJ also relied on Dr. Graham's observation that V.S. had been making "consistent

7

improvement," including through more "reciprocity, social motivation and interest in peer interaction." *Id.*

Fourth, in rating the "ability to care for himself" domain, the ALJ observed that V.S. "takes his medications on his own," "see[s] a speech therapist once every few months," and "occasionally sees a counselor at school." AR 44. In addition, the ALJ observed that the school questionnaires "indicate[d] no problems to serious problem" in this domain and that Dr. Graham's report did not indicate any marked limitations in this functional area. *Id.*

**B. The Appeals Council's Denial of Review**

Because the ALJ found that V.S. had neither two "marked" limitations nor one "extreme" limitation, and was therefore not disabled, Plaintiff requested in May 2018 that the Appeals Council review the ALJ' decision. AR 39-45, 184. In doing so, Plaintiff included a November 2017 "Initial Assessment and Treatment Plan" by a behavior analyst, Mr. Bradley Tremayne, M.Ed. AR 54-66, 178-85.[11] Shortly thereafter, in June 2018, Plaintiff for the first time retained counsel to represent her. AR 28-30. Plaintiff's counsel then created additional evidence by sending a two-page "Child Assessment Form" to two school officials and one therapist, instructing them to check the six boxes on this form that in their views correspond to V.S.'s limitations in the six domains of functioning. AR 18-27, 298, 991.[12] On June 28 and July 1, 2018, the Appeals

---

[11] Mr. Tremayne completed this report after reviewing the August 2017 report of psychologist Marybeth A. Graham, Ph.D., and after interviewing Plaintiff for two hours and observing her son for two hours. AR 54, 56. In this report, Mr. Tremayne set forth specific goals for Plaintiff and her son and recommended a therapy program. AR 65-66. In addition, Mr. Tremayne made the general observation that V.S.'s shortcomings in "communication skills, adaptive living skills, and social skills . . . interfere[d] with [his] ability to participate in home and community activities"—but he expressed no opinion on the severity of such interference or on whether Plaintiff's son had any "marked" or "extreme" limitations in the six domains of functioning. AR 54-66.

[12] V.S.'s "social communication teacher" rated him as having three "extreme" (and three "marked") limitations. AR 17-19, 991. His case manager rated him as having four "extreme" (and two "marked") limitations. AR 21-23, 298. And his cognitive-behavior therapist rated him as having five "extreme" (and one "marked") limitations. AR 24-26, 991.

8

Council sent a notice to counsel, describing the conditions under which it would consider additional evidence:

> You may send us . . . additional evidence. We consider additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

AR 10, 15. On July 12, 2018, counsel sent these completed "Child Assessment Forms" to the Appeals Council—accompanied with no explanation, aside from an introductory statement on a fax cover letter, stating that such forms were "additional evidence to be made part of the record." AR 17, 21, 24. In denying Plaintiff's request for review, the Appeals Council informed her that the additional evidence had not met the conditions that require the Appeals Council to conduct a review. AR 1-2. Specifically, it stated that Plaintiff's additional evidence—including Mr. Tremayne's November 2017 report—did not "relate to the [May 2015 to April 2018] period at issue." AR 2, 45.

## V. ANALYSIS

### A. The Appeals Council Did Not Err in Denying Plaintiff's Request for Review

Plaintiff argues that the additional evidence she submitted satisfied the conditions that require the Appeals Council to review her case. Mot. 5-12. Consequently, she asserts that the Appeals Council erred when it denied her request for review, specifically when it found that such evidence did not relate to the period at issue. *Id.*; AR 1-2. This Court disagrees.

*1. Applicable Legal Standard*

Although the SSA will "make every reasonable effort to *help* [claimants] get medical evidence from [their] own medical sources," providing such evidence is ultimately the claimant's responsibility:

> In general, *you* [the claimant] have to prove to us [the SSA] that you are blind or disabled. *You* must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires *you* to disclose any additional related evidence about which you become aware.

§ 416.912(a)-(b) (emphasis added) (internal citation omitted). A claimant is generally required to submit such evidence "no later than 5 business days before the date of the scheduled hearing" with the ALJ. § 416.1435(a). After this deadline, the ALJ will nevertheless still "accept [such] evidence if he or she has not yet issued a decision," provided good cause exists. § 416.1435(b).

After the ALJ's decision, and upon the claimant's request for review, "[t]he Appeals Counsel will review [the] case" if it receives additional evidence—but only if the following conditions are met:

> [1] [the additional evidence] is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision[;] [and]
>
> [2] [the claimant] show[s] good cause for not informing [the SSA] about or submitting the evidence.

20 C.F.R. § 416.1470(a)-(b).[13]

In applying these regulatory requirements, the Tenth Circuit has "repeatedly held" that "[w]hether evidence qualifies for consideration [by the Appeals Council] is a question of law subject to de novo review." *Padilla v. Colvin*, 525 F. App'x. 710, 712 (10th Cir. 2013) (unpublished) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)); *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d

---

[13] The regulation defines "good cause" as "unusual, unexpected, or unavoidable circumstance *beyond [the claimant's] control* [that] prevented [the claimant] from informing [the SSA] about or submitting the evidence earlier." § 416.1470(b) (emphasis added). Examples of such circumstances include the misleading of the claimant by the SSA, the claimant's limitations preventing him or her from providing the evidence, "death or serious illness," the accidental destruction of important records, and when the claimant "*actively and diligently* sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *Id.* (emphasis added).

1139, 1142 (10th Cir. 2004)). If, on the other hand, "the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Chambers*, 389 F.3d at 1142 (citations omitted).

   *2. Analysis*

The additional evidence that Plaintiff submitted did not qualify for Appeals Council review. As a preliminary matter, it is doubtful that the additional evidence met the requirement of being "new, material, and relate[ing] to the period [at issue], and [having] a reasonable probability . . . [of] chang[ing] the outcome of the [ALJ's] decision." 20 C.F.R. § 416.1470(a).[14] Nevertheless, the Court need not address this requirement—because Plaintiff never met her requirement to "show good cause for not informing [the SSA] about or submitting the evidence." § 416.1470(b). In fact, Plaintiff showed *no* cause—let alone *good* cause (i.e., some "circumstance beyond [her] control" that prevented her from submitting the evidence earlier)—when, over six months after Mr. Tremayne made his report, she submitted that report to the Appeals Council. *See* AR 54-66, 184-85. Likewise, Plaintiff showed *no* cause when, through counsel, she later submitted the three "Child Assessment Forms." *See* AR 17-27.[15]

---

[14] For example, although Mr. Tremayne's report was "new" and (despite the Appeal Council's notification to the contrary) "relate[d] to the period on or before" the ALJ's decision, it is doubtful that it was "material" and had a "reasonable probability . . . [of] chang[ing] the outcome of the [ALS's] decision." *Id.; see supra* note 11 (describing Mr. Tremayne's report as making the general, if not obvious, observation that V.S.'s shortcomings limited his "home and community activities"—but expressing no opinion on the *severity* of such limitations, particularly as applied to the six domains). Similarly, although the three "Child Assessment Forms" were "new" and perhaps (at least partially) related to the applicable time period, it is doubtful that they would have changed the outcome of the ALJ's decision—given that this conclusory, after-the-fact, attorney-generated evidence is inconsistent with the evidence of record, especially the medical evidence. *See supra* Section IV(A)(2); *see also* AR 22, 250 (case manager rating V.S. in April 2016 on an SSA form as having "no problems" in the domain of "acquiring and using information"—but rating him in May 2018 on the attorney-provided "Child Assessment Form" as now having an "extreme" impairment in this domain).

[15] Furthermore, the record contains no indication that—had Plaintiff shown cause in submitting any of the additional evidence—she could have established good cause (e.g., due to death, illness, the SSA misleading Plaintiff, or Plaintiff simply being unable to acquire the evidence—despite having "actively and diligently sought [it]"). § 416.1470(b); *see* AR 1-1001.

11

Plaintiff suggests that, because the Appeals Council did not expressly[16] deny review for lack of good cause, the good cause requirement is "inapplicable." Mot 6. But whether the Appeals Council must grant review due to the receipt additional evidence is "a question of law subject to [the Court's] de novo review." *Threet*, 353 F.3d at 1191. Under such a standard, the Court does not give deference to the Appeals Council's decision.[17] Instead, the Court must determine—de novo—whether the conditions for considering additional evidence have been met. In doing so, the Court holds that, because Plaintiff did not show the required "good cause," the additional evidence that she submitted did not qualify for mandatory review. § 416.1470(a)-(b). Consequently, because "[t]he evidence [did] not qualify, the Appeals Council [was not required to] consider it and it plays no role in judicial review." *Krauser*, 638 F.3d at 1328.[18]

## B. The ALJ Committed Harmless Error by Not Weighing the Consultants' Opinion

Plaintiff claims that the ALJ committed *reversible* error by not weighing the combined opinion of the three state agency consultants when they evaluated V.S. as having a "marked" limitation in the domain of "attending and completing tasks" (and having no limitations in two domains and "less than marked" in three). Mot. 13-14; Reply 3-5; AR 97-101. This Court disagrees.

---

[16] It appears that, because the Appeals Council denied review due to the additional evidence not "relat[ing] to the period at issue," it made no finding regarding good cause. *See* AR 1-2; § 416.1470(c) (stating that if the additional evidence "does not relate to the period [at issue]" or "the Appeals Council does not find [the claimant] had good cause," the Appeals Council will "send [the claimant] a notice that explains why it did not accept the additional evidence"). But, as explained in this section, the Court gives no deference to the Appeals Council's findings or absence of findings.

[17] *See*, *e.g.*, *United States v. Badger*, 818 F.3d 563, 568 (10th Cir. 2016) (observing that "[i]In exercising de novo review [the courts] afford no deference"); *Hite v. Saul*, No. 19-116 GJF, 2020 U.S. Dist. LEXIS 41241, 2020 WL 1158569, at *5 (D.N.M. Mar. 10, 2020) (observing, in its discussion of the good cause requirement, that "the task of applying de novo review relieves this Court of any obligation to pay deference to the tribunal below").

[18] *See also Hite*, 2020 WL 1158569, at *7 (holding, in its denial of remand, that "the additional evidence [did] not qualify under [§ 416.1470] because Plaintiff did not establish good cause" (citing *Threet*, 353 F.3d at 1191)); *id.* at *5 (reviewing "seven earlier decisions by other magistrate judges in this district in which good cause in this context was at least potentially at issue" (citations omitted)).

*1. Applicable Legal Standard*

"It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(c)). Furthermore, the ALJ must "discuss the weight he assigns to such opinions." *Id.*; *see also* § 416.927(c) (the SSA describing "how [it] weigh[s] medical opinions" and stating that "[it] will evaluate every medical opinion [it] receive[s]"). Nevertheless, "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).[19] "The rationale is that 'the claimant is not prejudiced because giving greater weight to the opinion would not have helped [him].'" *Terwilliger v. Comm'r, SSA*, No. 19-1028, 2020 WL 290421, at *4 (10th Cir. Jan. 21, 2020) (unpublished) (quoting *Mays*, 739 F.3d at 578); *see also id.* (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)) and that "the need for express analysis is weakened when the ALJ does not need to reject or weigh evidence unfavorably" to support her findings (quoting *Mays*, 739 F.3d at 578)).

*2. Analysis*

The Court finds that the consultants' evaluation qualifies as a medical opinion (i.e., statements that "reflect judgments about the nature and severity of [a claimant's] impairment(s)"). 20 C.F.R. § 416.927(a)(1). The Court, however, holds that "[the] ALJ's failure to weigh [such] a medical opinion involves harmless error" because "there is no inconsistency" between that medical opinion and the ALJ's finding. *Mays*, 739 F.3d at 578. Although the medical opinion and the

---

[19] An assessment of an adult's "residual functional capacity" (i.e., "what an individual can still do despite his or her limitations") is comparable to an assessment of a child's "functional equivalence" (i.e., "what a child can or cannot do" given the "limitations caused by [his or her] impairment(s)"). §§ 416.926a(a)-(b), 416.945(a); SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *2.

13

ALJ's finding may not be *identical*, they are not *inconsistent*—as both conclude that V.S. did not have the requisite two "marked" limitations or one "extreme" limitation to qualify as disabled. Indeed, even if the ALJ had completely adopted this opinion, it "would not have helped [Plaintiff]." *Id.*[20]

### C. The ALJ Was Not Required to Discuss Non-Significantly Probative Evidence

Plaintiff first claims that the ALJ erred by not weighing the "opinion" of V.S.'s pediatrician, Leslie Kurtz, M.D., as expressed in a two-page school medical information form, with attached medical notes from October 2008 (when V.S. was seven years old). Mot. 14-15 (citing AR 692-707). Specifically, she argues that the ALJ should have weighed Dr. Kurtz's statement that V.S.'s medical conditions "impaired [his] learning, socialization, [and] pragmatic use of language." *Id.* (quoting AR 692). Second, Plaintiff claims that the ALJ erred by not weighing several test scores from when V.S. was between five and seven years old, a "classroom assessment" at age 11, and his mother's (Plaintiff's) "adaptive behavior assessment" of him at age 15. Mot. 15-17.[21]

---

[20] Plaintiff asserts that, had the ALJ both adopted this opinion *and* given greater weight to *other* evidence, it would have made a difference. Reply 4-5. But, as discussed in Section V(C) below, the ALJ was not required to discuss—or give greater weight to—this other evidence. And to the extent Plaintiff invites the Court to reweigh this other evidence, the Court must refrain from doing so. *Newbold*, 718 F.3d at 1262.

[21] There were four tests or assessments between the ages of five and seven: (1) a 2007 (age five) "Preschool Language Scale-4" test, containing a "total language score" of over two standard deviations below the mean, AR 334; (2) a 2008 (age seven) "Woodcock-Johnson Achievement Battery III" test, containing a "broad math" score exactly three standard deviations below the mean, AR 405; (3) a 2008 (age seven) "School Companion Profile Summary," containing a rating of "'definite difference' in the areas of avoiding, school factor 3, school factor 4, auditory, and behavior," Mot. 17 (quoting AR 431-32); and (4) a 2009 (age seven) "Clinical Evaluation of Language Fundamentals," containing a "core language" score of over two standard deviations below the mean, as well as a score of exactly three standard deviations below the mean in the "following oral directions" category, AR 412, 417. *See* Mot. 16-17. In addition, there was a 2013 (age 11) "classroom assessment," containing the comment "[s]tudent is performing significantly below grade level/concept level," AR 341, and a 2017 (age fifteen) "Adaptive Behavior Assessment" that was *completed by Plaintiff* and attached to Dr. Graham's report, containing a "general adaptive composite [score]" of over three standard deviations below the mean, AR 1000-01. Mot. 16.

As explained below, the Court holds that the ALJ did not err by not discussing this evidence.

*1. Applicable Legal Standards*

A "true medical opinion" must "contain [the medical provider's] judgment about the nature and severity of [a claimant's] physical limitations, or any information about what activities [a claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (citation omitted); § 416.927(a)(1).

Although an ALJ must consider all of the evidence, "an ALJ is not required to discuss every piece of evidence." *Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Id.* (quoting *Clifton,* 79 F.3d at 1009-10).

The applicable regulation instructs the ALJ to find that a domain has a "marked" limitation when (1) the child has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a *comprehensive standardized test designed to measure ability or functioning in that domain*" and (2) the child's "day-to-day functioning in domain-related activities is consistent with that score." § 416.926a(e)(2) (emphasis added); *see also* § 416.926a(e)(3) (similarly requiring a finding of an "extreme" limitation when such scores are "three standard deviations or more below the mean" and consistent with the child's functioning). "If there is a *material inconsistency* between [the child's] test scores and other information in [the] case record, [the ALJ] will try to resolve it" by using two "guidelines:" (a) using the available information and obtaining more information if needed (e.g., through a consultative examination) and (b) not relying on the test score when "the test results are not the best measure of [a claimant's]

15

day-to-day functioning" and "explain[ing] [the] reasons for doing so." § 416.926a(e)(4) (emphasis added).

   2. *Analysis*

      a. The ALJ Was Not Required to Discuss the Information From Dr. Kurtz

The Court finds that the information conveyed by Dr. Kurtz on the 2008 school medical information form was not a "true medical opinion," as it did not "contain [Dr. Kurtz's] judgment about the nature and *severity*" of V.S.'s limitations. *Cowan*, 552 F.3d at 1189 (emphasis added); § 416.927(a)(1); *see* AR 692-707. Although Dr. Kurtz made the general statement that V.S.'s conditions "impaired" his learning, socialization, and language, such a statement did not elaborate on the *severity* of such limitations. Indeed, the majority of the ALJ's discussion focused not on whether V.S. had such limitations, but rather the *severity* of such limitations—an essential aspect of a medical opinion. *Id.*

Although Plaintiff identifies no other alleged "opinion" on the school information form, she argues that the ALJ was required to discuss the attached 15 pages of various medical notes— particularly a one-page "progress note" from August 2008 (when V.S. was six). *See* Mot. 14-15; Reply 3-6.[22] The Court, however, finds that this note—from when V.S. was six years old—is not "*significantly* probative" in determining whether, between the ages of 13 and 16, V.S. was disabled. *Mays*, 739 F.3d at 576 (emphasis added); *see also Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (observing that "[t]here is obviously no requirement that the ALJ reference everything in the administrative record" (citation omitted)). Consequently, the Court holds that

---

[22] This progress note—completed nearly *seven* years before the applicable disability timeframe that was considered by the ALJ—contained observations from an "mental status exam," specifically checked boxes that indicated, *inter alia*, "poor eye contact, immaturity, compulsivity, impaired memory, inattention, monotone speech, sparse language, obsessed thought content, anxious mood, bland and restricted affect, and impaired insight and judgment," along with a hand-written note that stated "ignored my presence." Mot 15 (citing AR 694).

16

the ALJ was "not required to discuss," *Mays*, 739 F.3d at 576, or weigh the information on this school medical information form.

        b. <u>The ALJ Was Not Required to Weigh the Test Scores</u>

The test scores put forth by Plaintiff do not qualify as (1) "*valid* score[s] . . . [on] *comprehensive* standardized test[s]" that measure "ability or functioning in [a] domain" and (2) being consistent with V.S.'s "day-to-day functioning in domain-related activities." § 416.926a(e) (emphasis added). Consequently, these scores did not require the ALJ to give any of the six domains a "marked" or "extreme" limitation.

To begin, the Court is not convinced that a young child's test scores from the ages of five to seven would still be considered "valid score[s]" when—between eight to eleven years later—those scores are then applied to a now-teenage child over a three-year period (ages 13 to 16). *See also* § 416.926a(g) (discussing different standards in the "acquiring and using information" domain for "preschool children" (ages 3-6), "school-age children" (ages 6-12), and "adolescents" (ages 12-18)). The mother's (Plaintiff's) 2017 "adaptive behavior" assessment might also be of questionable validity, especially when done while the application for disability benefits was on its way to a hearing with an ALJ.[23]

Furthermore, the Court is not convinced—and has been presented with no evidence or argument from Plaintiff—that the tests are "*comprehensive* standardized tests" that measure "ability or functioning in [a] *domain*." § 416.926a(e). Specifically, although V.S. had sufficiently low standard deviation scores at age five in a "preschool language" assessment and at age six in "core language" and "broad math" assessments, no test appears to *comprehensively* assess, for example, the *domain* of "acquiring and using information." *See supra* note 21. Similarly, V.S.'s

---

[23] And the remaining "companion profile summary" at age seven and "classroom assessment" at age 11 do not contain qualify scores under § 416.926a(e)(2) —as they contain no scores in terms of standard deviations. *See supra* note 21.

mother's "adaptive behavior" assessment does not appear to *comprehensively* assess, for example, the domain of "interacting and relating with others." *See id.*

More importantly, these questionably-comprehensive, questionably-valid scores do not meet the requirement of being consistent with V.S.'s "day-to-day functioning in domain-related activities"—particularly during the time frame at issue. § 416.926a(e)(2). First, the "markedly" and "extremely" low language and math scores from the three tests from the ages of five to seven, which at least relate to the domain of "acquiring and using information," are inconsistent with V.S.'s functioning as a teenager in this domain. *See* AR 40 (ALJ noting that, in this domain, *Plaintiff* testified that her son did well, *V.S.* testified regarding his good grades, a teacher rated him as having "no problems" in this domain, a 2015 speech and language report reflected only a moderate impairment, and his social worker indicated no serious problems). In addition, the "extremely" low scores from V.S.'s mother's "adaptive behavior" assessment, which at least relate to the domain of "interacting and relating with others," are also inconsistent with V.S.'s functioning in this domain. *See* AR 42 (ALJ noting that, in this domain, V.S. had "improved greatly," Plaintiff reported his "medication ha[d] been effective," the school social worker did not find any serious problems, and Dr. Graham found V.S. was making "consistent improvement" through more "reciprocity, social motivation and interest in peer interaction"—and contrasting such evidence with the "reports of the claimant's mother [that] he performed in the extremely low range in all adaptive functioning"). Consequently, the Court holds that none of these four tests required any domain to have a "marked" or "extreme" limitation. § 416.926a(e).[24]

---

[24] In addition, the Court holds that the remaining two tests, the "School Companion Profile Summary" at age seven, containing a rating of "definite difference," and the "classroom assessment" at age 11, which concluded that V.S. was "performing significantly below grade level/concept level"—neither of which contain qualifying scores, *see supra* note 23—likewise failed to meet the requirements of § 416.926a(e).

Finally, for the reasons discussed above, the Court holds that—with the possible exception of the scores from V.S.'s mother—the remaining test scores were not "significantly probative" and required no discussion from the ALJ. *Mays*, 739 F.3d at 576.[25] In addition, to the extent that the scores from V.S.'s mother *are* "significantly probative," they were amply addressed by the ALJ, who thoroughly discussed Dr. Graham's report (which contained these scores)—and who specifically contrasted her "extremely" low adaptive functioning ratings with the applicable evidence. *See* AR 39, 41-42, 44. Consequently, the Court holds that the ALJ was not required to further discuss the results of this assessment.

## VI. CONCLUSION

The ALJ applied the correct legal standards, and her findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.

---

[25] In addition, the Court holds that § 416.926a(e)(4) does not require the ALJ to discuss these test scores. Specifically, although the scores (as discussed above) were inconsistent with the "other information in [the] case record," these scores are not significantly probative, which makes their inconsistency with the evidence insignificant and therefore not "material." *Id.*