IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CATHERINE LOPEZ,

      Plaintiff,

vs.                                                         No. CIV 19-316 MV/GJF

SOCIAL SECURITY ADMINISTRATION,

      Defendant.

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on United States Magistrate Judge Gregory J. Fouratt's Proposed Findings and Recommended Disposition ("PFRD") [Doc. 31] and Plaintiff's Objections [Doc. 34].[1] For the following reasons, and having conducted a de novo review of the record, the Court hereby overrules Plaintiff's Objections and adopts the PFRD.

**I.    BACKGROUND**

In May 2015, Plaintiff applied for social security disability benefits on behalf of her then 13-year-old son, V.S., claiming that he was disabled due to autism, attention deficit hyperactivity disorder ("ADHD"), anxiety, and child development issues. Administrative Record ("AR") 94.[2] In November 2015, the Social Security Administration ("SSA") found that, in six broad areas of functioning, her son had only one "marked" limitation and no "extreme" limitations and thus concluded that he was not disabled. AR 98-101. In July 2016, upon Plaintiff's request for

---

[1] Defendant did not respond to these Objections. *See also* Fed. R. Civ. P. 72(b)(2) (stating that "[a] party *may* respond to another party's [PFRD] objections" (emphasis added)).

[2] Although Plaintiff claimed that her son was disabled as of October 2005 (at age four), the instant case concerns only whether he was disabled between May 2015 (at age 13) and April 2018 (at age 16). AR 45.

1

reconsideration, the SSA again concluded that her son was not disabled, finding that he had no "marked" or "extreme" limitations in any of these six areas. AR 106-07, 111-115, 129.

After these denials, Plaintiff requested a hearing, which was held in July 2017 before an Administrative Law Judge ("ALJ"). AR 67, 127. In April 2018, the ALJ also found that Plaintiff's son had no "marked" or "extreme" limitations in these six areas and likewise concluded that he was not disabled. AR 37-45. In February 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, after which Plaintiff timely petitioned this Court for relief. AR 1; Doc 1.

## II. ISSUES

In April 2020, Judge Fouratt issued his PFRD, which came to certain conclusions to which Plaintiff now objects:

> (1) The additional evidence that Plaintiff submitted did not qualify for mandatory review by the Appeals Council.
>
> (2) The ALJ committed harmless error by not weighing the state agency consultants' opinion.
>
> (3) The ALJ was not required to weigh (i) a treating pediatrician's 2008 "opinion" on a school medical information form or (ii) certain test scores.

PFRD 2, 9-19; Objections 3-25.

## III. STANDARD OF REVIEW

To preserve an issue for review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In reviewing such objections, the district court must "make a de novo determination of those portions of the [report and recommendation] . . . to which objection is made." 28 U.S.C. § 636(C); *see also* Fed. R. Civ. P. 72(b)(3). The district court is not, however, required to "make any specific findings; the district court must merely conduct a *de novo* review

of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000) (holding that a district court's "terse" order, containing only one sentence for each claim, was still "insufficient to demonstrate that the court failed to review the magistrate's recommendation *de novo*"). Consequently, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) (noting that "in the exercise of [its] sound judicial discretion," the district court may place "whatever reliance" it chooses to place on a magistrate judge's recommendation).

## IV. DE NOVO DETERMINATION

### A. The Additional Evidence Did Not Qualify for Mandatory Review

#### 1. *Pertinent Background*

The PFRD observed that, "as a preliminary matter, it is doubtful that the additional evidence" that Plaintiff submitted met the requirement of being "'new, material, and relat[ing] to the period [at issue], and [having] a reasonable probability . . . [of] chang[ing] the outcome of the [ALJ's] decision.'" PFRD 11 (quoting 20 C.F.R. § 416.1470(a)) (alterations in original).[3] "Nevertheless, the [PFRD] [did] not address this requirement," because it found that "Plaintiff never met her requirement to 'show good cause for not informing [the SSA] about or submitting the evidence.'" *Id.* (quoting § 416.1470(b)) (third alternation in original). Consequently, the PFRD concluded that the Appeals Council was not required to consider this evidence. PFRD 12 (citations omitted).

In reaching this conclusion, the PFRD quoted the following legal standards:

---

[3] A succinct description and assessment of this additional evidence can be found at PFRD 8-9, 11.

>After the ALJ's decision, and upon the claimant's request for review, "[t]he Appeals Council will review [the] case" if it receives additional evidence—but only if the following conditions are met:
>
>>[1] [the additional evidence] is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision[;] [and]
>>
>>[2] [the claimant] show[s] good cause for not informing [the SSA] about or submitting the evidence.
>
>20 C.F.R. § 416.1470(a)-(b).[4]
>
>In applying these regulatory requirements, the Tenth Circuit has "repeatedly held" that "[w]hether evidence qualifies for consideration [by the Appeals Council] is a question of law subject to de novo review." *Padilla v. Colvin*, 525 F. App'x. 710, 712 (10th Cir. 2013) (unpublished) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)); *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

PFRD 10-11 (footnotes and alternations in original). The PFRD then explained why the additional evidence that Plaintiff submitted did not qualify for Appeals Council review:

>Plaintiff showed *no* cause—let alone *good* cause (i.e., some "circumstance beyond [her] control" that prevented her from submitting the evidence earlier)—when, over six months after [a behavior analyst] made his report, she submitted that report to the Appeals Council. *See* AR 54-66, 184-85. Likewise, Plaintiff showed *no* cause when, through counsel, she later submitted the three "Child Assessment Forms." *See* AR 17-27.[5]

---

[4] The regulation defines "good cause" as "unusual, unexpected, or unavoidable circumstance *beyond [the claimant's] control* [that] prevented [the claimant] from informing [the SSA] about or submitting the evidence earlier." § 416.1470(b) (emphasis added). Examples of such circumstances include the misleading of the claimant by the SSA, the claimant's limitations preventing him or her from providing the evidence, "death or serious illness," the accidental destruction of important records, and when the claimant "*actively and diligently* sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *Id.* (emphasis added). [This good cause requirement was recently added to the regulation. *See* 81 Fed. Reg. 90987 (Dec. 16, 2016) (requiring compliance with this addition as of May 2017).]

[5] Furthermore, the record contains no indication that—had Plaintiff shown cause in submitting any of the additional evidence—she could have established good cause (e.g., due to death, illness, the SSA misleading Plaintiff, or Plaintiff simply being unable to acquire the evidence—despite having "actively and diligently sought [it]"). § 416.1470(b); *see* AR 1-1001.

> Plaintiff suggests that, because the Appeals Council did not expressly[6] deny review for lack of good cause, the good cause requirement is "inapplicable." Mot 6. But whether the Appeals Council must grant review due to the receipt [of] additional evidence is "a question of law subject to [the Court's] de novo review." *Threet*, 353 F.3d at 1191. Under such a standard, the Court does not give deference to the Appeals Council's decision.[7] Instead, the Court must determine—de novo— whether the conditions for considering additional evidence have been met. In doing so, the Court holds that, because Plaintiff did not show the required "good cause," the additional evidence that she submitted did not qualify for mandatory review. § 416.1470(a)-(b). Consequently, because "[t]he evidence [did] not qualify, the Appeals Council [was not required to] consider it and it plays no role in judicial review." *Krauser*, 638 F.3d at 1328.[8]

PFRD 11-12 (footnotes, emphasis, and alternations in original).

### 2. *Plaintiff's Objection*

Plaintiff reasserts her argument that the additional evidence she submitted satisfied the conditions that require the Appeals Council to review her case and that the Appeals Council therefore erred when it denied her request for review. Objections 3-15; *see also* Mot. [Doc. 22] 5-12. Specifically, Plaintiff argues that—because the Appeals Council did not expressly deny review for lack of good cause and because the Commissioner did not argue the good cause requirement in its Response brief—"that law is inapplicable," "the issue is waived," and the PFRD's analysis was therefore improper "*sua sponte*, *post hoc* rationale" that "usurp[ed] the agency's function."

---

[6] It appears that, because the Appeals Council denied review due to the additional evidence not "relat[ing] to the period at issue," it made no finding regarding good cause. *See* AR 1-2; § 416.1470(c) (stating that if the additional evidence "does not relate to the period [at issue]" or "the Appeals Council does not find [the claimant] had good cause," the Appeals Council will "send [the claimant] a notice that explains why it did not accept the additional evidence"). But . . . the Court gives no deference to the Appeals Council's findings or absence of findings.

[7] *See*, *e.g.*, *United States v. Badger*, 818 F.3d 563, 568 (10th Cir. 2016) (observing that "[i]n exercising de novo review [the courts] afford no deference"); *Hite v. Saul*, No. 19-116 GJF, 2020 U.S. Dist. LEXIS 41241, 2020 WL 1158569, at *5 (D.N.M. Mar. 10, 2020) (observing, in its discussion of the good cause requirement, that "the task of applying de novo review relieves this Court of any obligation to pay deference to the tribunal below").

[8] *See also Hite*, 2020 WL 1158569, at *7 (holding, in its denial of remand, that "the additional evidence [did] not qualify under [§ 416.1470] because Plaintiff did not establish good cause" (citing *Threet*, 353 F.3d at 1191)); *id.* at *5 (reviewing "seven earlier decisions by other magistrate judges in this district in which good cause in this context was at least potentially at issue" (citations omitted)).

Objections 3-11 (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Consequently, she urges this Court to hold that it is "constrained to review the propriety of the reason actually offered by the Appeals Council," *Emmons v. Saul*, Civ. No. 19-102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020), and that it therefore cannot perform a good cause analysis. Objections 5-11.[9]

3. <u>Discussion</u>

This Court, however, holds that it is not constrained to such a limited standard of review—because whether such evidence qualifies for consideration is "*a question of law* subject to our *de novo review*." *Threet*, 353 F.3d at 119 (emphasis added); *Krauser*, 638 F.3d at 1328. All five magistrate judge-level cases discussed by Plaintiff in support of her position provide essentially the same cursory explanation for declining to address the good cause requirement—namely, that the Appeals Council, in notifying the claimant of why it did not accept the additional evidence, had not discussed whether the claimant had established good cause.[10] In other words, these cases conclude, either explicitly or implicitly, that the Court is "constrained to review" (or may choose

---

[9] *See also id.* (reviewing five opinions from three magistrate judges who, between March 2019 and March 2020, declined to address the good cause requirement if it was not previously addressed by the Appeals Council: *Bisbee v. Berryhill*, Civ. No. 18-731 SMV, 2019 WL 1129459, at *5 n.6 (D.N.M. Mar. 12, 2019); *Arellano v. Saul*, Civ. No. 18-600 KK, 2019 WL 4016280, at *6 n.8 (D.N.M. Aug. 26, 2019); *Copelin v. Saul*, Civ. No. 18-727 KK, 2019 WL 4739536, at *7 n.17 (D.N.M. Sept. 27, 2019); *Emmons v. Saul*, Civ. No. 19-102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020); *Bleau v. Saul*, Civ. No. 19-300 KK, 2020 WL 1049252, at *6 (D.N.M. Mar. 4, 2020)); *but c.f. Hite v. Saul*, No. 19-116 GJF, 2020 WL 1158569, at *5-7 (D.N.M. Mar. 10, 2020) (rejecting, after holding oral argument on this issue, "Plaintiff's invitation to constrain its review only to the criterion or criteria actually addressed by the AC [Appeals Council]" and instead finding that "Plaintiff did not establish good cause" — a decision that counsel, who is the same counsel in the instant case, chose not to appeal).

[10] *See supra* note 9 (citing the applicable portions of these five cases, four of which (*Bisbee*, *Arellano*, *Copelin*, and *Bleau*) also note that the Commissioner in its Response brief did not address the good cause requirement and one of which (i.e., *Emmons*), although noting that the Commissioner brought up this requirement, dismisses any potential good cause argument as non-reviewable "*post hoc* rationale"). Plaintiff also discusses *Holder v. Berryhill*, No. 17-1206 LF, 2019 WL 2716758 (D.N.M. June 28, 2019), but this case contains no discussion of good cause under 20 C.F.R. § 416.1470(a)-(b). *See Holder*, 2019 WL 2716758, at *4 (clarifying that if a claimant misses the deadline to request a review by the Appeals Council, the dismissal of a such an untimely request is "binding and not subject to further review" (citing 20 C.F.R. § 404.972; *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (commenting that if the claimant "misses the deadline and cannot show good cause . . . the Appeals Council . . . dismisses [the request]")).

6

to review) only "the propriety of the *reason actually offered* by the Appeals Council." *Emmons*, 2020 WL 376708, at *5 (emphasis added).  But such a conclusion is not grounded in Tenth Circuit precedent.  Indeed, *none* of these cases cite to *any* Tenth Circuit authority for the proposition that, when the Appeals Council rejects new evidence and the Court reviews the matter, the Court must (or may) review only the "reasons actually offered" by the Appeals Council.  *See supra* note 9.  In fact, the Tenth Circuit has expressly held otherwise—namely, that "we revisit the matter de novo" (i.e., that "we exercise de novo review when the claimant challenges the Appeals Council's rejection of such evidence").  *Krauser*, 638 F.3d at 1328-29 (citing *Threet*, 353 F.3d at 1191).

Furthermore, the Tenth Circuit has clarified that the standard of review to be applied when addressing evidence submitted to the Appeals Council depends on whether the Appeals Council *accepted* or *rejected* the evidence—not the reasoning offered by the Appeals Council for its decision.  *Krauser*, 638 F.3d at 1328-29.  Specifically, "when the Appeals Council *accepts* additional evidence, that is an implicit determination that it is qualifying new evidence," and thus "there may be good reason to hold the agency to its own decision."  *Id.* (emphasis in original) (internal quotation marks and alterations omitted).[11]  Otherwise, "where the Appeals Council *rejects* new evidence as non-qualifying and the claimant challenges that ruling on judicial review," the Court must "revisit the matter de novo."  *Id.* (emphasis in original).  Plaintiff, however, urges this Court to inquire into the *reasoning* offered by the Appeals Council when it rejects evidence—and then to limit its review to those reasons addressed by the Appeals Council.  *See* Objections 3-11.[12]  But, as the *Hite* court explained, "the task of applying de novo review relieves this Court of

---

[11] *See also id.* (observing that when the Appeals Council accepts a claimant's additional evidence, the only potentially "aggrieved" party that could object would be the agency—but that any such objection would amount to "*the agency* . . . objecting to *its own* ruling" and thereby "inherently . . . offering a new, post-hoc rationale for *its* decision contrary to the general rule" (emphasis added) (citations omitted)).

[12] And if the *reasoning* offered did not discuss good cause, Plaintiff further urges the Court to essentially conclude that the good cause requirement either (a) no longer applies or (b) has been satisfied.  *See id.*  But any such conclusion

7

*any obligation to pay deference to the tribunal below*:"

> In this Court's de novo review, it matters not whether the AC [Appeals Council] made a finding or expressed any opinion whatsoever on the good cause requirement. In other words, whether the AC was right, wrong, or silent on the good cause question is irrelevant because this Court is required to take a fresh look at that question altogether unburdened by what the AC thought about it. Thus, the Court rejects Plaintiff's invitation to constrain its review only to the criterion or criteria actually addressed by the AC. Whatever such a contrived standard of review would be called, it is most certainly not the de novo review the Court is required by Tenth Circuit precedent to apply.

*Hite*, No. 19-116 GJF, 2020 WL 1158569, at *5 (emphasis added).[13]

In light of the foregoing, this Court agrees with the PFRD's analysis and adopts *in toto* its conclusion that "because Plaintiff did not show the required good cause, the additional evidence that she submitted did not qualify for mandatory review" and therefore "the Appeals Council was not required to consider it and it plays no role in judicial review." PFRD 12 (quoting *Krauser*, 638 F.3d at 1328; § 416.1470(a)-(b)) (internal quotation marks and brackets omitted).[14]

---

would be founded on the *reasons* that were (or were not) offered by the Appeals Council—a result that amounts to some sort of *deferential* standard of review, which is inconsistent with the *de novo* standard of review that this Court must apply. *Krauser*, 638 F.3d at 1328-29.

[13] *See also Timmons v. White*, 314 F.3d 1229, 1233-34 (10th Cir. 2003) (reviewing the "pronouncements of federal courts discussing the term [de novo] in the context of judicial review of administrative decisions" and observing that the term "involv[es] review that is unfettered by any prejudice from the [prior] agency proceeding" and ordinarily means "a fresh, independent determination of the matter at stake"—an inquiry in which no "deference [is] due [to] the agency's conclusion" (quoting *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting); *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987)) (citing *United States v. First City National Bank of Houston*, 386 U.S. 361, 368 (1967) (holding that "review de novo" means review requiring "an independent determination of the issues")).

[14] The Court finally notes that Plaintiff's Objections emphasize that the Commissioner did not address good cause in its response brief. Objections 5-6. Although it is perhaps understandable that the Commissioner's Response brief did not address Plaintiff's brief dismissal of the good cause requirement as "inapplicable"—particularly when Plaintiff relied solely on an inapplicable case (*Holder*, No. 17-1206 LF) to support that incorrect proposition, *see* Mot. 6; *see also supra* note 10 (discussing *Holder*); Mot. 6-11 (primarily arguing that the evidence would have changed the outcome); Response 7-9 [Doc. 26] (arguing that the evidence would not have changed the outcome)—the content or quality of the Response brief is not the issue, as it was *Plaintiff* who asked this Court to find that the Appeals Council's erroneously rejected her evidence, Mot. 5-12, and it is *the Court* that is charged with determining this matter *de novo*.

**B. The ALJ Committed Harmless Error by Not Weighing the Consultants' Opinion**

The PFRD concluded that the ALJ committed harmless error by not weighing the combined medical opinion of three state agency consultants, which evaluated Plaintiff's son as having one "marked" limitation (out of six "domains" of functioning). PFRD 112-14.[15] In doing so, the PFRD discussed and applied the pertinent law as follows:

> "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).[16] "The rationale is that 'the claimant is not prejudiced because giving greater weight to the opinion would not have helped [him].'" *Terwilliger v. Comm'r, SSA*, No. 19-1028, 2020 WL 290421, at *4 (10th Cir. Jan. 21, 2020) (unpublished) (quoting *Mays*, 739 F.3d at 578).
>
> The Court . . . holds that "[the] ALJ's failure to weigh [such] a medical opinion involves harmless error" because "there is no inconsistency" between that medical opinion and the ALJ's finding. *Mays*, 739 F.3d at 578. Although the medical opinion and the ALJ's finding may not be *identical*, they are not *inconsistent*—as both conclude that V.S. did not have the requisite two "marked" limitations or one "extreme" limitation to qualify as disabled. Indeed, even if the ALJ had completely adopted this opinion, it "would not have helped [Plaintiff]." *Id.*[17]

PFRD 13-14 (footnotes, emphasis, and alternations in original).

Plaintiff's Objection reasserts her overall claim that the ALJ committed harmful error by not weighing this opinion. Objections 15-19; Mot. 13-14; Reply 3-5. In doing so, she asserts that

---

[15] A child can be considered disabled if two out of six "domains" have "marked" limitations or one domain has an "extreme" limitation. 20 C.F.R. §§ 416.924(b)-(d), 416.926a(a). A succinct description of these "domains," the criteria for "marked" limitations, and the additional requirements to establish a disability for a child can be found at PFRD 4-5.

[16] An assessment of an adult's "residual functional capacity" (i.e., "what an individual can still do despite his or her limitations") is comparable to an assessment of a child's "functional equivalence" (i.e., "what a child can or cannot do" given the "limitations caused by [his or her] impairment(s)"). §§ 416.926a(a)-(b), 416.945(a); SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *2.

[17] Plaintiff asserts that, had the ALJ both adopted this opinion *and* given greater weight to *other* evidence, the ALJ would have reached a different outcome. Reply 4-5. But, as discussed later in the PFRD, the ALJ was not required to discuss—or give greater weight to—this other evidence. And to the extent Plaintiff invites the Court to reweigh this other evidence, the Court must refrain from doing so. *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

9

the PFRD's conclusion is "contrary to case law" because the case on which it relied, *Mays*, 739 F.3d 569, discussed an *adult's* "residual functional capacity." Objections 15-19. But as the PFRD noted, an ALJ's finding regarding an adult's "residual functional capacity" is comparable to an ALJ's finding regarding a child's "functional equivalence." *See supra* note 16. More significantly, however, Plaintiff cannot show that the conclusions of the ALJ and the consultants (i.e., the conclusions that V.S. did not have the requisite number of "marked" or "extreme" limitations) are *inconsistent*—or that the ALJ adopting the consultants' opinion would have helped. *See* Objections 15-19; *see also supra* note 17 (observing that outcome of the ALJ's decision could only have changed if the ALJ gave greater weight to *other* evidence).[18]

In light of the foregoing, this Court agrees with the PFRD's analysis and adopts *in toto* its conclusion that "'[the] ALJ's failure to weigh [such] a medical opinion involves harmless error' because 'there is no inconsistency' between that medical opinion and the ALJ's finding." PFRD 13 (quoting *Mays*, 739 F.3d at 578).

---

[18] Plaintiff appears to argue that, because this opinion contained the isolated phrase "allegations are considered credible" in notations that are attached to the ratings of three of the six "domains," adopting the opinion somehow could have led to a finding of disability. Objections 17. But to reach a finding of disability based on such a phrase, the ALJ would have had to *reject* this opinion—which concluded that that V.S. did *not* have the requisite number of "marked" or "extreme" limitations to be disabled. Specifically, the ALJ would have had to (1) focus solely on these isolated credibility comments (which provide no explanation as to *what* the "allegations" were, *who* made them, or *why* or *how* such unspecified allegations should be considered credible); (2) misinterpret these comments to mean that V.S.'s *ultimate allegation* of disabling limitations (as opposed to, for example, V.S.'s specific allegations or statements regarding his symptoms as they relate to each of the six domains) is correct—a conclusion that is directly contrary to what the opinion expressly concluded (i.e., that his limitations were not disabling); and (3) reweigh the evidence by *rejecting* the opinion's conclusion—its raison d'etre—while simultaneously giving more weight to such unexplained (and misinterpreted) *credibility* comments (comments which, in any event, do not qualify as medical opinions, *see infra* Section IV(C)). *See also Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (observing that "[c]redibility determinations are peculiarly the province of the [ALJ]" (internal quotation marks omitted)). Consequently, the Court agrees with the PFRD's conclusion that "there is no inconsistency" between this medical opinion and the ALJ's finding that V.S.'s limitation were not disabling; thus, "even if the ALJ had completely adopted this opinion, it 'would not have helped [Plaintiff].'" PFRD 14 (quoting *Mays*, 739 F.3d at 578) (brackets in original).

**C. The ALJ Was Not Required to Weigh the 2008 "Opinion" or the Test Scores**

   *1. The 2008 "Opinion"*

The PFRD concluded that the ALJ was not required to "weigh[] the 'opinion' of V.S.'s pediatrician, Leslie Kurtz, M.D., as expressed in a two-page school medical information form, with attached medical notes from October 2008 (when V.S. was seven years old)," that stated specifically "V.S.'s medical conditions 'impaired [his] learning, socialization, [and] pragmatic use of language.'" PFRD 14-17 (citations omitted) (brackets in original). In reaching this conclusion, the PFRD discussed and applied the law as follows:

> A "true medical opinion" must "contain [the medical provider's] judgment about the nature and severity of [a claimant's] physical limitations, or any information about what activities [a claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (citation omitted); [20 C.F.R.] § 416.927(a)(1).
>
> Although an ALJ must consider all of the evidence, "an ALJ is not required to discuss every piece of evidence." *Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Id.* (quoting *Clifton,* 79 F.3d at 1009-10).
>
> The Court finds that the information conveyed by Dr. Kurtz on the 2008 school medical information form was not a "true medical opinion," as it did not "contain [Dr. Kurtz's] judgment about the nature and *severity*" of V.S.'s limitations. *Cowan*, 552 F.3d at 1189 (emphasis added); § 416.927(a)(1); *see* AR 692-707. Although Dr. Kurtz made the general statement that V.S.'s conditions "impaired" his learning, socialization, and language, such a statement did not elaborate on the *severity* of such limitations. Indeed, the majority of the ALJ's discussion focused not on whether V.S. had such limitations, but rather the *severity* of such limitations—an essential aspect of a medical opinion. *Id.*
>
> Although Plaintiff identifies no other alleged "opinion" on the school information form, she argues that the ALJ was required to discuss the attached 15 pages of various medical notes—particularly a one-page "progress note" from August 2008 (when V.S. was six). *See* Mot. 14-15; Reply 3-6.[19] The Court, however, finds that

---

[19] This progress note—completed nearly *seven* years before the applicable disability timeframe that was considered by the ALJ—contained observations from a "mental status exam," specifically checked boxes that indicated, *inter alia,* "poor eye contact, immaturity, compulsivity, impaired memory, inattention, monotone speech, sparse language,

11

>this note—from when V.S. was six years old—is not "*significantly* probative" in determining whether, between the ages of 13 and 16, V.S. was disabled. *Mays*, 739 F.3d at 576 (emphasis added); *see also Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (observing that "[t]here is obviously no requirement that the ALJ reference everything in the administrative record" (citation omitted)). Consequently, the Court holds that the ALJ was "not required to discuss," *Mays*, 739 F.3d at 576, or weigh the information on this school medical information form.

PFRD 14-17 (footnotes, emphasis, and alternations in original).

Although Plaintiff argues that the provider's general statement that V.S. had impairments in learning, socialization, and language qualifies as a medical opinion, *see* Objections 20-21, such a statement does not reflect the medical provider's *judgments* regarding either "the nature and severity of [these] impairment(s)" or "what [V.S.] can still do despite [these] impairment(s)." 20 C.F.R. § 416.927(a)(1); *Cowan*, 552 F.3d at 1189. And Plaintiff discusses no facts or authorities that persuade this Court otherwise. *See* Objections 20-21. Furthermore, although Plaintiff argues that certain attached medical notes (particularly a one-page "progress note" from when V.S. was six) can still qualify as "relevant" or "probative," *see* Objections 21-22; Mot. 14-15; Reply 3-6, she provides no explanation for how such evidence could have met the well-established requirement of being "*significantly* probative," *Mays*, 739 F.3d at 576 (emphasis added). *See* Objections 21-22.

In light of the foregoing, this Court agrees with the PFRD's analysis and adopts *in toto* its conclusion that the ALJ was not required to discuss or weigh the information on this school medical information form.

---

obsessed thought content, anxious mood, bland and restricted affect, and impaired insight and judgment," along with a hand-written note that stated "ignored my presence." Mot 15 (citing AR 694).

## 2. *The Test Scores*

The test scores at issue consisted of "several test scores from when V.S. was between five and seven years old, a 'classroom assessment' at age 11, and his mother's (Plaintiff's) 'adaptive behavior assessment' of him at age 15." PFRD 14.[20] The PFRD found that these scores "[did] not "meet the requirement of being consistent with V.S.'s day-to-day functioning" and "were not significantly probative." PFRD 18-19 (internal quotation marks omitted). Consequently, it concluded that the ALJ was not required to discuss them or adopt their results into her findings. *Id.* In reaching such conclusions, the PFRD discussed and applied the law as follows:

> [T]hese questionably-comprehensive, questionably-valid scores do not meet the requirement of being consistent with V.S.'s "day-to-day functioning in domain-related activities"—particularly during the time frame at issue. § 416.926a(e)(2). First, the "markedly" and "extremely" low language and math scores from the three tests from the ages of five to seven, which at least relate to the domain of "acquiring and using information," are inconsistent with V.S.'s functioning as a teenager in this domain. *See* AR 40 (ALJ noting that, in this domain, *Plaintiff* testified that her son did well, *V.S.* testified regarding his good grades, a teacher rated him as having "no problems" in this domain, a 2015 speech and language report reflected only a moderate impairment, and his social worker indicated no serious problems). In addition, the "extremely" low scores from V.S.'s mother's "adaptive behavior" assessment, which at least relate to the domain of "interacting and relating with others," are also inconsistent with V.S.'s functioning in this domain. *See* AR 42 (ALJ noting that, in this domain, V.S. had "improved greatly," Plaintiff reported his "medication ha[d] been effective," the school social worker did not find any serious problems, and Dr. Graham found V.S. was making "consistent improvement" through more "reciprocity, social motivation and interest in peer interaction"—and contrasting such evidence with the "reports of the claimant's mother [that] he performed in the extremely low range in all adaptive functioning"). Consequently, the Court holds that none of these four tests required any domain to have a "marked" or "extreme" limitation. § 416.926a(e).
>
> [T]he Court holds that—with the possible exception of the scores from V.S.'s mother—the remaining test scores were not "significantly probative" and required no discussion from the ALJ. *Mays*, 739 F.3d at 576. In addition, to the extent that the scores from V.S.'s mother *are* "significantly probative," they were amply addressed by the ALJ, who thoroughly discussed Dr. Graham's report (which contained these scores)—and who specifically contrasted her "extremely" low

---

[20] For a more detailed description of these test scores, as well as why the PFRD characterized them as "questionably-comprehensive, questionably-valid," see PFRD 14 n.21, 17-18.

13

> adaptive functioning ratings with the applicable evidence. *See* AR 39, 41-42, 44. Consequently, the Court holds that the ALJ was not required to further discuss the results of this assessment.

PFRD 18-19 (emphasis and alternations in original) (footnotes omitted).

Plaintiff Objections regarding these conclusions provide no argument or explanation for how the scores could have been (1) *consistent* with V.S.'s "day-to-day functioning in domain-related activities" (and thus requiring the ALJ's findings to adopt such scores), § 416.926a(e)(2), or (2) "significantly probative" (and thus requiring the ALJ to discuss such scores). *See* Objections 22-25 (focusing almost exclusively on the PFRD's characterization of the scores as "questionably-comprehensive, questionably-valid"—a characterization on which its conclusion did not rely).

In light of the foregoing, this Court agrees with the PFRD's analysis and adopts *in toto* its conclusion that the ALJ was not required to discuss (or further discuss) these test scores or adopt their results into her findings.

## V. CONCLUSION

Following its de novo review of the record, the Court agrees with the analysis and conclusions set forth in the PFRD.

**IT IS THEREFORE ORDERED** that Plaintiff's Objections [Doc. 34] are **OVERRULED** and that the PFRD [Doc. 31] is **ADOPTED** in its entirety.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion to Reverse and Remand [Doc. 22] is **DENIED**, and that this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**